UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-421-CHL

DANA MICHELE CURRY,                                                                                        **Claimant,**

v.

COMMISSIONER OF SOCIAL SECURITY,                                      **Defendant.**

## Memorandum Opinion

Claimant Dana Curry ("Curry") has appealed the Commissioner's decision denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). On October 6, 2017, Curry consented to the undersigned's jurisdiction. (DN 15.) For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

### I. Factual Background

Curry filed her initial application for SSI and DIB on August 14, 2013. (DN 13-5, #227.) Her application was initially denied in November 2013 and again upon reconsideration. (DN 13-4, #157.) Curry and her attorney appeared before Administrative Law Judge Dwight Wilkerson ("ALJ") for a hearing on February 24, 2016. (DN 13-2, #92.) The ALJ issued an unfavorable opinion in May 2016. (DN 13-2, #74.) In his written opinion, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since December 26, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right humeral shaft fracture status post open reduction and internal fixation, degenerative disc disease, osteoarthritis, hypothyroidism, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand, walk, or sit for 6 of 8 hours per day. She can occasionally crawl and climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can perform frequent handling, fingering, and reaching with her non-dominant right upper extremity. She should not work at unprotected heights.

6. The claimant is capable of performing past relevant work as a childcare worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2012 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(DN 13-2, #79–85.) The Appeals Council subsequently denied Curry's request for review. (*Id*. at 63.)

## II. Summary of Law

The Social Security Act authorizes payment of DIB and SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as follows:

> [An i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). When a claimant files an application for DIB, the claimant must establish that he or she became "disabled" prior to the date his or her insured status expired. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Only steps four and five are at issue in this case.

At step four, the ALJ considers the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(f). RFC is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted). The claimant has the burden of proof during the first four steps. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1). At step five, the burden shifts to the Commissioner to demonstrate that there are other jobs the claimant is capable of performing in the local area. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

The Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d

680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803F.2d 211, 213 (6th Cir. 1986).

### III. Analysis

On appeal, Curry argues that the ALJ erred in two ways. First, she claims that he did not follow Sixth Circuit precedent when analyzing the opinion of her treating physician, Dr. Brent Duncan. (DN 17-1, #668.) Second, Curry also appears to argue that the ALJ improperly discredited her testimony at her hearing when she testified about the severity of her pain and other symptoms. (*Id*. at 679.) The Court will address both arguments in turn.

#### A. Treatment of Dr. Duncan's Treating Source Opinion

Curry's principal argument concerns the ALJ's analysis and his eventual decision to apply little weight to Dr. Duncan's treating source opinion. (DN 17-1, #667.) Curry relies on a form questionnaire that Dr. Duncan filled out for the basis of his opinion; on the form questionnaire, Dr. Duncan answered certain questions by circling a pre-selected response or placing a checkmark in a box. (DN 13-7, #656.) Briefly summarized, Dr. Duncan opined that Curry can occasionally carry up to twenty pounds, frequently carry ten pounds, stand or walk for up to two hours a day, and sit for about four hours a day. (*Id*.) She can sit for thirty minutes before having to change

4

positions, stand for ten minutes before changing positions, must walk around every fifteen minutes (and walk for at least 5 minutes), and needs to "unpredictably" lie down one or two times a week. (*Id.*). In the space in where he was asked which medical findings supported those limitations, he wrote "back, knee, ankle pain." (*Id.*) Dr. Duncan further opined that Curry could occasionally twist, stoop (bend), crouch, climb stairs, and climb ladders. (*Id.* at 657.) He once again wrote "back, knee, ankle pain" in support of his opinion. (*Id.*) He checked the "often" box when posed with the question of how frequently Curry's symptoms would be severe enough to affect her ability to pay attention and concentrate on work-related tasks. (*Id.*) He stated that she would need to miss more than four days per months because of her symptoms. (*Id.*) Finally, Dr. Duncan indicated that the symptoms and limitations described within the questionnaire first arose in January 2015. (*Id.*)

Curry argues that Dr. Duncan's opinion "establishes…far greater, and more detailed limitations than are included in the ALJ's RFC finding," and that even if the Court only "partially" credits his findings, they would support a sedentary work limitation, not light work as the ALJ found. (DN 17-1, #670–71.) Her main legal argument is that the ALJ violated the treating physician rule when he did not give "good reasons" for not assigning Dr. Duncan's opinion controlling weight. (*Id.* at 671.) She further asserts that the ALJ's general statement of how Dr. Duncan's report was inconsistent with the record and how she received "conservative" treatment do not qualify as "good reasons" for denying Dr. Duncan's opinion controlling weight. (*Id.* at 673–74.) Curry goes on to highlight how the ALJ did not define the term "conservative," but nevertheless cited it as a factor as to why he would not assign controlling weight to Dr. Duncan's opinion. (*Id.* at 681.)

5

Under the Social Security regulations, there are three categories of medical sources: treating, examining, and non-examining sources. 20 CFR §404.1502. A physician will be considered a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502). There is no disagreement among the parties that Dr. Duncan qualifies as a treating physician, so the Court will move on to the next step in the analysis. A treating physician's medical opinion is generally entitled to controlling weight, but it is not automatically given such weight. It is well-established that "the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> [A]pply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). These factors are the "good reasons" the Court referenced above. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors if his explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008). The Commissioner is correct in asserting that

one-sentence explanations can be sufficient under Sixth Circuit precedent. *See Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009) (holding that the ALJ's one sentence rejection of a treating physician's opinion was proper where the opinion was conclusory, not supported by objective medical evidence, and addressed claimant's credibility, and where the ALJ's sentence explained as much).

In this case, the Court finds that the ALJ gave "good reasons" for not assigning Dr. Duncan's opinion controlling weight. In the ALJ's written opinion, there is only one sentence that directly addresses Dr. Duncan's opinion: "[Dr. Duncan]'s treatment does not support this level of limitation and is given little weight." (DN 13-2, #83.) The ALJ's statement reflects two of the "good reason" factors – supportability of the opinion and consistency with the record as a whole. As noted above, Dr. Duncan placed rather severe restrictions on Curry's ability to work. (DN 13-7, #656–57.) But as the ALJ noted throughout his opinion, Curry's medical treatment history (mostly from Dr. Duncan) and her work activity following her 2012 vehicle accident belie imposing limitations on her as severe as the ones proffered by Dr. Duncan. (*Id*. at 82–83.) For instance, Dr. Duncan's treatment notes from July 13, 2015, indicate that Curry complained of right ankle pain, but it did not limit any of her daily activities. (*Id*. at 521.) In fact, he noted that the swelling in her right ankle had "significantly improved" since her last visit. (*Id*. at 522.) Curry also complained of back pain, but Dr. Duncan noted that it was "alleviated by heat, ice, and medication." (*Id*. at 521.) In a follow up visit in September 2015, there is no mention of ankle pain, and Dr. Duncan noted that Curry's back pain had "improved." (*Id*. at 518.)

Curry takes issue with the ALJ categorizing the above treatment as "conservative," but the Court is doubtful that her treatment from Dr. Duncan can be described as anything other than

7

"conservative." (DN 17-1, #680–82.) While it is true that the ALJ did not define what he meant by the term "conservative," there is no requirement under Sixth Circuit precedent or the Social Security Regulations that the ALJ include a definition for terms used within their common meaning. Defined by Webster's Dictionary, conservative, when used as an adjective, means "not extreme or drastic."[1] As stated above, this is an accurate description of Duncan's treatment for Curry's back and ankle problems. There is no evidence to suggest that by using this term, the ALJ was somehow creating a new requirement that a claimant undergo surgery for her treating physician's treatment record to support his imposed limitations. Indeed, the Sixth Circuit has previously used the term "conservative treatment" to describe a claimant's treatment history in the context of supportability of an opinion. *See Branon v. Comm'r of Soc. Sec.*, 539 Fed. App'x. 675, 678 (6th Cir. 2013) (stating that a "conservative treatment approach" suggests that the claimant did not suffer from a disabling condition). While it is true that Curry did undergo serious surgical procedures in 2012 and 2013, Dr. Duncan indicated on his evaluation form that Curry's "symptoms and limitations," including her back and ankle pain, began in January 2015. (DN 13-7, #657.) Thus, the only treatment she received for her pain was, as described above, conservative in nature.

Based on these notes, the Court concludes that there is substantial evidence to support the ALJ's decision to assign little weight to Dr. Duncan's opinion.

### B. Treatment of Curry's Testimony Regarding Her Symptoms and Pain

Curry also argues that the ALJ improperly weighed the testimony she gave at her hearing regarding her symptoms and claims of pain. (DN 17-1, #679–80.) It is not clear from Curry's brief what the implications of the ALJ's alleged errors regarding Curry's testimony are. She argues

---

[1] "Conservative." Merriam-Webster Online Dictionary. 2018. https://www.merriam-webster.com/dictionary/conservative (Aug. 31, 2018).

that the ALJ should have found her testimony concerning her complaints of pain more credible than he did because he should not have used the fact that she tried to return to work after her injuries as a discrediting fact. (*Id.*) At her hearing, Curry testified, *inter alia*, that she has "problems" with her right foot requiring the usage of a "boot," and that she "can't sit too long because…[her] back [starts to hurt]." (DN 13-2, #107–08.) She also complained of pain in her knees. (*Id.* at 108.) Curry stated that the back and knee braces given to her by her doctor help with the pain, but that they don't "take the pain completely away." (*Id.* at 108–09.) She testified that can continue to do housework, but that it takes her longer to complete her tasks than it did in the past. (*Id.* at 109.) She also noted persistent migraine headaches and continued pain in her right arm. (*Id.* at 110–11.) Finally, Curry stated that she suffers from insomnia and has been prescribed medication for it. (*Id.* at 112.)

Curry's argument is essentially one of credibility – whether the ALJ properly weighed her testimony or not. A claimant challenging the AJL's analysis of her testimony faces a high burden, because it is well-established in the Sixth Circuit that an ALJ's "credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x. 508, 511 (6th Cir. 2013) (citing *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 112 (6th Cir. 2010)); *see also Buxton v. Halter*, 246 F. 3d 762, 773 (6th Cir. 2001) (ALJ's determination of a claimant's credibility is "entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."). An ALJ's judgment of credibility cannot be disturbed absent a "compelling reason." *Ritchie*, 540 Fed. App'x at 112.

In this case, the Court finds that the ALJ's analysis of Curry's testimony is supported by substantial evidence. In his opinion, the ALJ pointed to the fact that Curry's hypothyroidism has

9

been effectively controlled with medication since 2012, and there have been no complaints about it since then. (DN 13-2, #82.) He also examined x-rays of Curry's left ankle and back, noting that her injuries had healed as to the former and observing "stable mild degenerative changes" as to the latter. (*Id.*) As the Court explained in the previous section, the ALJ also noted that Curry's most recent treatment plans for her back, ankle, and knee were limited to using a brace, ice, and naproxen (an anti-inflammatory drug). (*Id.* at 83.) Finally, the ALJ highlighted that following her injuries, Curry returned to work, where she performed a variety of light-duty tasks, and that she continues to perform household tasks (albeit at a decreased pace). (*Id.*) Curry's recent treatment history and the x-rays of her back and ankle support the ALJ's decision to not find her claims of severe pain completely credible.

Curry has directed the Court to a Sixth Circuit case, *White v. Comm'r of Soc. Sec.*, where the Sixth Circuit stated that the claimant's "extensive work history and attempts to continue working despite his disability support his credibility." 312 Fed. App'x. 779, 789 (6th Cir. 2009). But in that case, the Sixth Circuit noted that the ALJ had failed to explain how the objective medical evidence was inconsistent with the claimant's testimony. *Id.* at 788–89. It also observed that the ALJ failed to address the claimant's work history following the onset of his symptoms. *Id.* at 789. That is not the case here, where the ALJ highlighted the inconsistencies between Curry's testimony and the objective medical evidence in the record and addressed Curry's work history. The substantial evidence standard does not require reversal because a reasonable person could examine the evidence and reach the opposite conclusion, but only when there is an absence of evidence to support the ALJ's decision. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

Here, there is substantial evidence to support the ALJ's decision to find Curry's testimony to not be credible.

### IV. Conclusion

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision. An order of judgment will be entered separately.

cc: Counsel of record